## In the Matter of the Estate of ELIJAH D. TAFT, Deceased.

Surrogate's Court, Kings County, October 14, 1932.

*William H. Good*, for the executor.

*Sidney S. Hodes*, for Rose Watkins Dunbar.

*Abner C. Surpless*, special guardian.

*Monahan McAuliff*, for Mary Donelly.

WINGATE, S.    Shorn of unessentials and surplus verbiage, a single question is submitted for solution on this motion for reargument, namely, whether under the laws of New York an executor can keep an estate substantially unproductive for almost a generation, thereby depriving a natural dependent of the testator of the support given her by the will, and escape scot-free in spite of his malfeasance or nonfeasance.    In its former opinion in this case (143 Misc. 387) the court indicated its disbelief in any such possibility.    It is still of the opinion that such a result is so incompatible with fundamental principles of justice that it is to be avoided unless controlling authority dictates a contrary course.

The consideration of the arguments on behalf of the executor requires a somewhat more extended recital of the pertinent facts than was given in the former opinion.

Testator's will erected a life estate for his wife, who predeceased him, and then continued: '' Upon the decease of my said wife, I authorize and empower my executors to sell and dispose of, grant and convey, all my remaining real estate, for the best prices which they can obtain for the same, and I will and direct that the same and my personal · estate (except certain personal items here immaterial) * * * shall be divided and distributed among my surviving children, and the issue of any who may be dead, in the manner following, viz.:

" 4th. I direct that the residue of said proceeds be divided into six equal parts, and I give one of said equal parts to each of my surviving children, viz. * * *."

Five of such parts were then given to named children outright and the sixth was given to " Mary Eliza Jorgensen, to receive, upon trust, the said Rosella's share of my estate," etc.

Testator died on March 1, 1915, and letters testamentary were issued to the present accountant on May 28, 1915.

The executor contends that under the language of the will quoted, the power of sale granted to him was discretionary and not mandatory. The court cannot concur in such a construction. His argument is largely based on the use of the word " authorize " in the grant. This, however, is by no means conclusive. (*Ayers* v. *Courvoisier*, 101 App. Div. 97, 100.) In the will at bar it was obviously testator's intention that " upon the decease of " his wife, his executors should " sell * * * all " of his " real estate, for the best prices which they can obtain for the same " and that such proceeds " be divided into six equal parts * * * and distributed among " testator's children, with Rosella's share payable in trust and the others outright. The testamentary intent thus disclosed causes the direction to fall clearly within the definition of a mandatory power of sale (*Matter of Gantert*, 136 N. Y. 106, 110; *Holly* v. *Gibbons*, 176 id. 520, 526; *Matter of Jackson*, 258 id. 281, 285; *Matter of Boyle*, 140 Misc. 523, 529; *Matter of Arns*, 144 id. 584, 585; *Boehmcke* v. *McKeon*, 119 App. Div. 30, 31), since " its exercise is rendered necessary by the scope of the will and its declared purposes * * * and his intention cannot otherwise be carried out." (*Matter of Gantert, supra.*)

Under the terms of the will, this direction for sale became mandatory " upon the decease of my said wife." Since she predeceased the testator, it took effect upon his death, and was at all times a binding obligation upon the executor from the instant of his qualification. In spite of this fact, however, the law will grant the executor a reasonable time within which to perform this duty, " to be determined by the circumstances of the case " (*Clayton* v. *Kingston*, 202 App. Div. 165, 168; see, also, *Matter of Varet*, 181 id. 446, 448; affd., 224 N. Y. 573; *Lawrence* v. *Littlefield*, 215 id. 561, 581; *Matter of Surpless*, 143 Misc. 48, 52), the test of which " must remain, the diligence and prudence of prudent and intelligent men in the management of their own affairs." (*Matter of Weston*, 91 N. Y. 502, 511.) In this connection, however, the burden is on the objectors to demonstrate a lack of such diligence and prudence on the part of the executor. So far as concerns the time of sale of the real property herein, or the amounts received therefor,

such burden has not been sustained and it must be determined, therefore, that the properties were sold as promptly as possible, and for the best prices obtainable.

Such sales were finally consummated on January 15, 1917, and on July 1, 1927. On the former date $5,600 was realized. The total sum realized on the property last sold was $1,602.05, which was received at various times beginning on November 24, 1916, the main item of $1,200 having been received on May 24, 1926.

The obligations of the executor, compositely imposed by the will and by law, were to marshal the assets of the estate, sell the property not specifically bequeathed, pay the debts and administration expenses and distribute the net avails as directed by the will. The performance of all of these duties was required with all reasonable diligence and the utmost good faith. The fact, shown by the record, that no payments have been made to the beneficiaries even up to the present time, established in the absence of exculpating circumstances, demonstration of which has not been attempted, that he has been culpably regardless of the duty last enumerated. Over fifteen years ago he had in his hands moneys to which testator's children and the trustee for Rosella were entitled. Instead of paying these over as he should, he has, in effect, emulated the example of the unfaithful servant in the parable and " laid them up in a napkin."

The only objections interposed have been made on behalf of those interested in the trust for Rosella and these must be sustained. Since the directions of the will respecting sale were mandatory, they effected an equitable conversion of the realty as of the time of testator's death, with the result that the beneficiary of the trust was entitled to income from that time. (*Lawrence* v. *Littlefield*, 215 N. Y. 561, 583, and cases cited.) As noted in the former opinion in this case, the rate of such income is to be based on the general rate of earnings of the estate. If no income was earned, obviously none would be payable. The period during which income at such rate only is payable would terminate with the date on which the obligation of the executor to pay over portions of principal accrued. In the ordinary case this would be at the end of the executorial year. In the present instance, in view of the absence of showing of culpable neglect by the executor in failing to sell the Bainbridge street property prior to January 15, 1917, it would accrue on that date. The former decision of the court is modified to this extent. On that date, the executorial year having long since expired, it became the duty of the executor to pay over to Rosella's trustee one-sixth of the net principal sum in his hands after setting up a reserve for the readily ascertainable unpaid

administration expenses. His failure so to do is followed by the imposition of the usual penalty for failure to pay money when due, namely, a charge of interest at legal rates. (*Matter of Harned*, 140 Misc. 151, 153, 154; affd., 234 App. Div. 796, and cases cited.) When moneys came in from the sale of the Queens property, one-sixth of the net receipts became payable to the trustee in like manner, and the failure to pay them over results in an imposition of a like penalty.

The requested approval of an allowance of $250 to the counsel for the executor is granted, such sum to be in full of all services to and including the final settlement of the estate.

In view of the unexplained total disregard by the executor of the rights of the distributees for approximately a decade and a half and until a compulsory accounting proceeding was instituted against him, the court will exercise its discretion to disallow commissions to him.

The former decision of this court is modified to the extent of holding that Rosella was entitled to one-sixth of the net income of the estate if any from the date of death to January 15, 1917, and that she and those succeeding to her rights were entitled to interest at six per cent on the net sums which should have been paid over to the trust from the dates they respectively became payable.

Proceed accordingly.